39 F.3d 1186
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Adan DELGADO-LOPEZ, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 93-70853.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 7, 1994.
Decided Nov. 1, 1994.
 
 Before: WOOD,* HUG, and TANG, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Adan Delgado-Lopez ("Delgado") petitions for review of the Board of Immigration Appeals' ("BIA") reversal of the immigration judge's ("IJ") grant of a section 212(c) waiver in favor of Delgado. We have jurisdiction pursuant to 8 U.S.C. Sec. 1105a(a), and we reverse.
 
 I.
 
 3
 Delgado has lived in the United States with his family since he was 11 years old. In 1980, at the age of 13, Delgado was granted United States lawful permanent resident status. His siblings are all United States citizens. His only relative remaining in Mexico is his grandfather.
 
 
 4
 Delgado lived with his parents until 1989 when he moved out in order to keep and manage his own money and to plan for the future. Unfortunately, soon after moving out, Delgado was "tempted" by an offer of a new acquaintance. Delgado agreed to keep something in his apartment for Alejandro Seca in exchange for $1,000. The material kept was a plastic garbage bag full of one-pound packages of marijuana. Less than 24 hours after receiving the delivery, police arrived at Delgado's apartment and charged him with possession of marijuana with intent to deliver. After conferring with his lawyer, Delgado pled guilty and was sentenced to 18 months imprisonment. Delgado served 13 months, receiving one-third time off for good behavior.
 
 
 5
 Based on the above conviction, the INS issued Delgado an Order to Show Cause why he should not be deported. Delgado conceded deportability, but sought a waiver pursuant to section 212(c) of the Immigration and Naturalization Act, 8 U.S.C. Sec. 1182(c). After a hearing on May 15, 1990, the IJ found Delgado deportable as charged, but granted his application for a waiver under section 212(c). The INS appealed the IJ's decision to the BIA. On September 29, 1993, without a new hearing, the BIA sustained the INS's appeal and denied Delgado's application for a waiver. Delgado appeals the BIA's decision.
 
 II.
 
 6
 On appeal, we must determine whether the BIA erred in denying Delgado's application for a waiver of deportation. Because the BIA reviewed the IJ's decision de novo, we review the BIA's decision for abuse of discretion. Yepes-Prado v. INS, 10 F.3d 1363, 1366-67 (9th Cir.1993).
 
 
 7
 The IJ found that Delgado established outstanding equities in favor of a grant of a waiver of deportation. See id. at 1366 (outstanding equities required if petitioner convicted of a particularly grave offense). Although recognizing that Delgado was convicted of a "very serious crime," the IJ nonetheless determined that the special facts of Delgado's case warranted a waiver of deportation. First, the crime was an isolated event. Delgado had no juvenile criminal record, nor any subsequent record. Second, Delgado expressed sincere remorse, testifying with "great pain" as to the mistakes he made and the effect it had on his family. He chose to "face[ ] the music," as stated by the IJ, rather than lie and put himself in a better light when given the opportunity. Third, Delgado's close-knit, upstanding family stood by him, despite the pressures, humiliation, and shame placed on them in their small community. Finally, the court looked at Delgado's long-time residence in the United States and noted his positive behavior while living here. Based on the testimony of an employer and a school teacher, the IJ determined that Delgado exemplified good work habits. The IJ found that the above-favorable factors outweighed the adverse factors of his serious conviction.
 
 
 8
 Three and one-half years later, with no additional hearing or evidence, the BIA reversed the IJ's decision. The BIA summarily recited the equities found by the IJ, noted that some were indeed "outstanding equities" but discounted others, made an implicit negative credibility finding with regard to Delgado's testimony, and found no convincing evidence of rehabilitation, despite the fact that the record the BIA reviewed was developed less than four months after Delgado was released from prison. We conclude that the BIA abused its discretion for several reasons.
 
 
 9
 First and foremost, the BIA based much of its conclusion on Delgado's failure to establish rehabilitation. We recently held that if the BIA intends to treat an alien's failure to establish rehabilitation as an adverse factor, it must take into account the short period of time between release from prison and the deportation hearing. Id. at 1373. In such cases, it is "virtually impossible for petitioners to demonstrate that they have been rehabilitated." Id. We determined that requiring greater proof of rehabilitation in these circumstances may have the same effect as a refusal to exercise discretion. Id.
 
 
 10
 In Delgado's case, the BIA did just that: It required a virtually impossible showing of rehabilitation by Delgado. The BIA dismissed Delgado's good behavior in prison as "commendable, ... but to be expected." It discounted Delgado's expressions of remorse and his family's assertions of support, and it completely failed to consider by administrative notice or otherwise Delgado's lack of any kind of criminal involvement in the three and one-half years since his release from prison. It is unclear to us what more Delgado could have done to establish rehabilitation. We hold that the BIA required Delgado to make a heightened showing of rehabilitation immediately after his release from prison, and as such, the BIA abused its discretion.
 
 
 11
 We find further fault with the BIA's decision in that it implicitly made a negative credibility finding with respect to the events surrounding Delgado's conviction. The IJ noted that we will never know whether Delgado intended to deliver the marijuana because the police did not wait long enough before raiding to determine who was buying and who was selling. Finding no testimony from the Drug Enforcement Agency or anyone else who observed Delgado partaking in bartering or gain from the transaction, the IJ acknowledged Delgado's explanation that his "intent" was to deliver it back to Seca.
 
 
 12
 In its ruling, the BIA held that the IJ gave inadequate consideration to the seriousness of Delgado's criminal misconduct. In essence, the BIA determined from a cold record that Delgado was lying, and that his version of the events did not accurately reflect the circumstances of his crime. Looking at the elements and circumstances of the crime and Delgado's guilty plea, the BIA concluded that they "speak far more persuasively than his attempt to explain away the crime as a mere bailment."
 
 
 13
 We review the BIA's rejection of the IJ's credibility finding to determine whether it was reasonably supported by the evidence. See McCullen v. INS, 658 F.2d 1312, 1318 (9th Cir.1981). We conclude that the BIA's finding was not reasonably supported.
 
 
 14
 The BIA looked to the street value of the marijuana and to the severity of the sentence Delgado received in discounting Delgado's explanation of the crime. However, while it was labeled an "exceptional sentence," it was at the low end of what the sentencing court could have given Delgado. He received 18 months, from a range of one-to-three months to a maximum of five years. In its explanation for the exceptional sentence, the court stated that this case involved a quantity "substantially larger than for personal use." Thus, the severity of Delgado's sentence does not reasonably support a finding that Delgado's explanation was untrue. To the contrary, Delgado never denied the amount of marijuana involved.
 
 
 15
 The BIA also focused on Delgado's then-recent living conditions, a newly rented apartment, for support that the crime was more serious than the IJ or Delgado acknowledged. Again, however, this conclusion is not reasonably supported. Delgado offered a verifiable explanation for moving out from his parents: He was tired of the requirement that his parents control his finances while he lived under their roof. But there is no evidence in the record that Delgado was in need of money to support his new lifestyle, nor is the evidence inconsistent with Delgado's testimony. The BIA's conclusion that the IJ gave inadequate consideration to the seriousness of Delgado's criminal conduct is not reasonably supported by the record. It is based on faulty logic. See Nasseri v. Moschorak, No. 93-55997, slip op. 11115, 11123 (9th Cir. Sept. 14, 1994).
 
 
 16
 Finally, we conclude that the BIA conducted an improper and incomplete balancing of both the favorable and the unfavorable factors relevant to a determination of section 212(c) waiver. We require the BIA to indicate how it weighed the relevant factors. Yepes-Prado, 10 F.3d at 1370. "Without such an explanation, [we] cannot tell whether the ... BIA has departed from established policies in deciding a particular [section] 212(c) application and thereby abused its discretion." Id. Here, the BIA abused its discretion in summarily reciting, and then rejecting without sufficient explanation, the "outstanding equities" found by the IJ. Further, while we do not require an "exegesis" on every contention, in this case, the BIA conducted an incomplete review. "Cursory, summary, or conclusory statements are inadequate." Batoon v. INS, 707 F.2d 399, 401 (9th Cir.1983).
 
 
 17
 Accordingly, the decision of the BIA is REVERSED.
 
 
 
 *
 Honorable Harlington Wood, Jr., Senior United States Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3