53 F.3d 337
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Marco Antonio BARRERA-CORTEZ, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70166.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 19, 1995.*
Decided April 26, 1995.
 
 Before: BROWNING, SNEED, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Marco Antonio Barrera-Cortez, a native and citizen of Mexico, petitions for review of the Board of Immigration Appeals' ("BIA") affirmance of the immigration judge's ("IJ") denial of his request for a waiver of deportation pursuant to section 212(c) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1182(c). We have jurisdiction pursuant to 8 U.S.C. Sec. 1105a(a), and we grant the petition.
 
 
 3
 * Background
 
 
 4
 Barrera-Cortez, a lawful permanent resident, came to the United States from Mexico with his mother, father, four sisters and two brothers on December 14, 1970, at the age of ten. He has one older sister who remained in Mexico.
 
 
 5
 Barrera-Cortez lived with his parents in Corona, California, until he was arrested in February, 1987, at which time he pled guilty to four counts of burglary. Prior to the burglary conviction, Barrera-Cortez had been arrested twice for being under the influence of drugs. Barrera-Cortez was employed since the age of seventeen, and regularly contributed tow
 
 
 6
 Barrera-Cortez lived with his parents in Corona, California, until he was arrested in February, 1987, at which time he pled guilty to four counts of burglary. Prior to the burglary conviction, Barrera-Cortez had been arrested twice for being under the influence of drugs. Barrera-Cortez admits that about two years before his burglary conviction, he began using heroin and that to support his habit he committed four burglaries within a three week period. Barrera-Cortez was sentenced to prison for a term of six years and eight months, and served half that time because of good behavior.
 
 
 7
 Based on the burglary conviction, the INS issued an order to show cause why Barrera-Cortez should not be deported. Barrera-Cortez conceded deportability, but sought a waiver pursuant to section 212(c). After a hearing, the IJ found Barrera-Cortez deportable as charged and denied his application for a waiver under section 212(c). The BIA adopted the opinion of the IJ and dismissed Barrera-Cortez's appeal. Barrera-Cortez petitions for review of the BIA's decision.
 
 II
 Merits
 
 8
 "We review agency fact-finding to see if it is supported by substantial evidence, and the balancing of the equities underlying a 212(c) determination for an abuse of discretion." Yepes-Prado v. INS, 10 F.3d 1363, 1366 (9th Cir.1993) (internal cites omitted). A decision to deny section 212(c) relief will be set aside only if the BIA "fails to support its conclusions with a reasoned explanation based upon legitimate concerns." Vargas v. INS, 831 F.2d 906, 908 (9th Cir.1987). "[W]here the BIA does not perform an independent review of the IJ's decision and instead defers to the IJ's exercise of his or her discretion, it is the IJ's decision that we review." Campos-Granillo v. INS, 12 F.3d 849, 852 (9th Cir.1993).
 
 
 9
 "In exercising his responsibility, an IJ must determine whether to grant section 212(c) relief based on all the facts and circumstances of a particular case, taking into account the social and humane considerations presented in an applicant's favor and balancing them against the adverse factors that evidence the applicant's undesirability as a permanent resident." Yepes-Prado, 10 F.3d at 1365-66.
 
 
 10
 "Favorable considerations include: 1) family ties within the U.S.; 2) residence of long duration in this country (particularly when the residence began at a young age); 3) hardship to the petitioner or petitioner's family if relief is not granted; 4) service in the United States armed forces; 5) a history of employment; 6) the existence of business or property ties; 7) evidence of service to the community; 8) proof of rehabilitation if a criminal record exists; and 9) other evidence of good character." Id. at 1366. These favorable factors are weighed against: 1) the nature and underlying circumstances of the crime; 2) additional violations of immigration law; 3) the existence, seriousness, and recency of any criminal record; and 4) other evidence of bad character or the undesirability of the applicant. Id.
 
 
 11
 Here, in considering the favorable equities, the IJ found that Barrera-Cortez had extensive family ties within the United States, that he had resided here since the age of ten, and that he had a history of steady employment both before and after his incarceration, including full-time employment at the time of the hearing. In considering the negative equities, the IJ found that Barrera-Cortez had not served in the armed forces, had offered no evidence of community service, and had no business or property ties. The IJ also concluded that there would be no hardship to Barrera-Cortez's family if he were to be deported. Finally, the IJ concluded that rehabilitation was an adverse factor because he was not persuaded that Barrera-Cortez had "reached a point of rehabilitation."
 
 A. Hardship
 
 12
 Barrera-Cortez contends that the IJ abused his discretion by failing to address evidence that he presented in favor of his section 212(c) application. This contention has merit.
 
 
 13
 An agency's "failure to address the evidence [of hardship] presented or to articulate reasons for its negative conclusion [is] an abuse of discretion requiring reversal and remand." Mattis v. INS, 774 F.2d 965, 968 (9th Cir.1985); see also Rashtabadi v. INS, 23 F.3d 1562, 1571 (9th Cir.1994) (an agency's failure to address evidence of a relevant factor presented in support of an alien's section 212(c) application constitutes an abuse of discretion).
 
 
 14
 Here, the IJ concluded that "there's no evidence of any particular hardship" to Barrera-Cortez's mother because Barrera-Cortez did not help with the rent and because Mrs. Barrera-Cortez had survived while her son was in prison. The record indicates, however, that although Mrs. Barrera-Cortez paid most of the $510 rent out of her $600 social security check, Barrera-Cortez paid all of the utilities, food bills and installments on furniture in the apartment. The record also indicates that Mrs. Barrera-Cortez was able to survive while her son was in prison because she received financial support from her husband and two other sons. Prior to Barrera-Cortez's release from prison, however, Barrera-Cortez's father and both of his other brothers died, leaving Barrera-Cortez the only family member able to support his mother.
 
 
 15
 Given these circumstances, the IJ's conclusory assertion that "there's no evidence of any particular hardship" failed to address the releveant evidence in the record of the hardship Barrera-Cortez's mother would suffer if he were deported. See id.
 
 B. Rehabilitation
 
 16
 Barrera-Cortez also contends that the IJ abused his discretion by considering rehabilitation to be an adverse factor. This contention has merit.
 
 
 17
 Failure to address evidence of rehabilitation presented in support of an alien's section 212(c) application constitutes an abuse of discretion. Rashtabadi, 23 F.3d at 1571. "Requiring greater proof of rehabilitation in cases brought soon after a petitioner's release from incarceration may have the same effect as a refusal to exercise discretion." Yepes-Prado, 10 F.3d at 1373. Accordingly, where an agency intends to treat a failure to show rehabilitation as an adverse factor, it should consider the difficulty of demonstrating rehabilitation when there has been a limited amount of time between release from incarceration and the initiation of deportation proceedings. Id.
 
 
 18
 Here, Barrera-Cortez, his mother and his sister testified that upon his release from prison, Barrera-Cortez and his mother moved to another town so that he would be able to avoid his former companions. Barrera-Cortez's sister testified that before Barrera-Cortez and his mother found a new apartment, "he lived with me for a couple of months, so he wouldn't go back to the town that he used to live in." Barrera-Cortez submitted a letter from his parole officer which stated that Barrera-Cortez "continues to do well ... has not submitted any positive drug tests, [c]ontinues to work regularly and maintains a good attitude." Barrera-Cortez also submitted letters from two drug recovery groups which corroborated his testimony that he was attending drug rehabilitation groups.
 
 
 19
 In addition, while in prison, Barrera-Cortez voluntarily completed a GED course, received his high school diploma, completed ten units of college credits with a 4.0 average, and completed a course on personal development and life management. Finally, Barrera-Cortez submitted numerous recommendations from teachers at prison which describe Barrera-Cortez as "conscientious and hardworking," "self-disciplined and motivated" and "diligent." He also submitted a prison report showing that he had never been disciplined. The INS, however, submitted evidence that since his release from prison, Barrera-Cortez had received a citation for reckless driving.
 
 
 20
 Although the IJ apparently found Barrera-Cortez's testimony credible, the IJ, nevertheless, considered rehabilitation to be an adverse factor. The IJ concluded that "[o]n the face of it, it does appear as though Mr. Barrera has reached a point of constructive and useful activity, has attempted to rehabilitate himself ... [nevertheless] I am not persuaded by the totality of the evidence I've heard here today that Mr. Barrera has reached a point of rehabilitation."
 
 
 21
 Given the limited amount of time between Barrera-Cortez's release from prison and his deportation hearing, and the substantial amount of evidence submitted in support of his rehabilitation, we conclude that it was an abuse of discretion to treat rehabilitation as an adverse factor in this instance. See Yepes-Prado, 10 F.3d at 1373.
 
 
 22
 We therefore grant the petition and remand this case to the BIA for further consideration of Barrera-Cortez's section 212(c) application.
 
 
 23
 PETITION GRANTED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3