86 F.3d 1162
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Omar MORELL-ACOSTA, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70442.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 17, 1996.
Decided May 31, 1996.
 
 Before: ALARCON, BEEZER and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Omar Morell-Acosta, a native and citizen of Cuba, petitions for review of a decision of the Board of Immigration Appeals ("BIA") affirming the immigration judge's ("IJ") denial of his applications for waiver of deportation, asylum and withholding of deportation. He contends that the BIA failed to consider adequately and weigh properly the evidence supporting his applications for relief. We have jurisdiction pursuant to 8 U.S.C. § 1105a(a). We deny the petition.
 
 
 3
 * In 1980, along with approximately 125,000 other undocumented Cubans, Morell-Acosta came to the United States in the Mariel boatlift. Soon after arriving, he was released on immigration parole, and in 1987, his status was adjusted to lawful permanent resident.
 
 
 4
 Morell-Acosta has been diagnosed as suffering from mental retardation in addition to various other medical problems. He collects monthly Supplemental Security Income benefits for his psychiatric disability and is unemployed. A fellow Mariel Cuban lives with and takes care of him.
 
 
 5
 On August 12, 1988, in California Superior Court, Morell-Acosta pleaded guilty to and was convicted of two counts of possession of cocaine. As a result of his convictions, he was ordered to show cause why he should not be deported pursuant to 8 U.S.C. § 1251(a)(11) (current version at 8 U.S.C. § 1251(a)(2)(B)(i)), as an alien who has been convicted of a violation of a controlled substance law. At his deportation hearing, he conceded deportability and applied for waiver of deportation under section 212(c) of the Immigration and Nationality Act ("the Act"), 8 U.S.C. § 1182(c), asylum under section 208(a) of the Act, 8 U.S.C. § 1158(a), and withholding of deportation under section 243(h) of the Act, 8 U.S.C. § 1253(h). The IJ denied his applications, and the BIA affirmed. Morell-Acosta timely appeals.
 
 II
 
 6
 * Section 212(c) authorizes the Attorney General to grant discretionary relief from deportation to lawful permanent residents who meet the provision's seven-year residency requirement. Yepes-Prado v. INS, 10 F.3d 1363, 1365 (9th Cir.1993). To determine whether relief should be granted, the IJ must take "into account the social and humane considerations presented in an applicant's favor and balanc[e] them against the adverse factors that evidence the applicant's undesirability as a permanent resident." Id. at 1365-66 (citing In re Edwards, Interim Dec. No. 3134 (BIA 1990)).
 
 
 7
 The BIA has enumerated several factors to consider in determining whether to grant relief. Those considerations that favor relief include:
 
 
 8
 1) family ties within the United States; 2) residence of long duration in this country (particularly when residence began at a young age); 3) hardship to the petitioner or petitioner's family if relief is not granted; 4) service in the United States armed forces; 5) a history of employment; 6) the existence of business or property ties; 7) evidence of value and service to the community; 8) proof of rehabilitation if a criminal record exists; 9) other evidence attesting to good character.
 
 
 9
 Id. at 1366 (citing In re Edwards ). Those factors to be weighed against relief include: "1) the nature and underlying circumstances of the exclusion or deportation ground at issue; 2) additional violations of the immigration laws; 3) the existence, seriousness, and recency of any criminal record; 4) other evidence of bad character or the undesirability of the applicant as a permanent resident." Id. (citing In re Edwards ).
 
 B
 
 10
 We review the ultimate determination whether to grant section 212(c) relief under an abuse of discretion standard. Because the BIA apparently performed a de novo review of the IJ's decision, we review the BIA's decision. Id. ("where the BIA engages in de novo review of the IJ's factual and legal determinations, we consider only the decision of the BIA because any errors made by the IJ will be rendered harmless."). We note, however, that the outcome of this case would not change if we reviewed the decision of the IJ.
 
 C
 
 11
 Morell-Acosta contends that the BIA abused its discretion in denying section 212(c) relief because it improperly considered his mental retardation as a negative factor in determining his undesirability as a permanent resident. He also contends that the BIA failed to examine the hardship he would face if returned to Cuba.[1]
 
 
 12
 * Morell-Acosta argues that the BIA abused its discretion in considering his mental retardation as a negative factor because section 212(a) was amended in 1990 to eliminate mental retardation as a ground for exclusion. Under the provision as it currently reads, an alien may be excluded for having a mental disorder only if that disorder poses "a threat to property, safety, or welfare of the alien or others...." 8 U.S.C. § 1182(a)(1)(A). Morell-Acosta argues that when Congress amended the exclusion grounds, it signalled that all immigration decisions, including decisions whether to grant discretionary waivers of deportation, should be made without regard to one's mental retardation if it does not pose a threat. He relies on Yepes-Prado to support his argument.
 
 
 13
 In Yepes-Prado, we held that a petitioner's status as an unwed parent could not be considered a negative factor based on, among other reasons, the fact that Congress eliminated "the statutory ground for exclusion based on 'sexual deviancy.' " 10 F.3d at 1369. We concluded that this change, along with other statutory changes and the corresponding legislative history, "evidence Congress's intent that private sexual conduct among consenting adults should no longer be considered a legitimate basis for making immigration decisions." Id. Morell-Acosta argues that based on the same logic, mental retardation also should no longer be considered.
 
 
 14
 Yepes-Prado does not support Morell-Acosta's argument that an alien's mental retardation can no longer be considered in determining whether to grant section 212(c) relief. Although mental retardation was eliminated as a per se reason for exclusion, section 212(a) still provides for exclusion if a person's mental disorder causes him to be a threat, 8 U.S.C. § 1182(a)(1)(A), and section 212(a) also provides for exclusion if one is likely to become a public charge. 8 U.S.C. § 1182(a)(4).
 
 
 15
 The BIA considered Morell-Acosta's mental retardation only in regards to its effect on his likelihood of becoming a public charge and on his likelihood of committing further criminal offenses. The BIA explained that because of his mental retardation, Morell-Acosta was unable to work, and the BIA noted that Morell-Acosta's mental retardation may have contributed to his committing the crimes for which he was convicted. These would be legitimate considerations in an exclusion determination and they are clearly legitimate considerations in a discretionary waiver of deportation determination.[2]
 
 
 16
 Morell-Acosta argues, however, that while the likelihood of becoming a public charge is normally a legitimate consideration, it was not in his case because of his Cuban nationality. He argues that section 202 of the Immigration Reform and Control Act of 1986 eliminated this consideration for Cuban nationals in all immigration decisions. Pub.L. No. 99-603, § 202, 100 Stat. 3359, 3404 (1986). This argument fails.
 
 
 17
 While Congress in section 202 waived the consideration of whether a Cuban will become a public charge in status adjustment decisions, Congress made no indication in the legislative history or with other statutory changes that such a consideration was inappropriate in other immigration decisions. Likelihood of becoming a public charge was retained as an exclusion ground and was waived only for those Cubans who were already in the United States and otherwise eligible for adjustment of status. With section 202, Congress simply made it easier for Cubans to have their status adjusted to that of aliens lawfully admitted for permanent residence; it did not legislate the proper considerations in discretionary waiver of deportation determinations.
 
 2
 
 18
 Morell-Acosta's second ground for arguing that the BIA abused its discretion in denying section 212(c) relief was its failure to adequately examine the hardship he would face if returned to Cuba. An agency abuses its discretion if, in making a discretionary section 212(c) decision, it fails to "indicate 'how it weighed the factors involved' and 'how it arrived at its conclusion.' " Yepes-Prado, 10 F.3d at 1370 (quoting Dragon v. INS, 748 F.2d 1304, 1307 (9th Cir.1984)). One of the factors enumerated by the BIA which favors a grant of relief is the "hardship to the petitioner or petitioner's family if relief is not granted." Yepes-Prado, 10 F.3d at 1366.
 
 
 19
 The BIA properly considered the hardship Morell-Acosta will face following deportation to Cuba, and the BIA explained how it weighed this hardship against the negative factors involved. The BIA explained that "[w]e are persuaded that the respondent's deportation could result in hardship to him, and we agree that there are therefore strong social and humane reasons for granting his 212(c) application." The BIA concluded, however, that "[w]hile we are sympathetic to the respondent's plight, he has failed to overcome the evidence of his undesirability as a permanent resident," including his failure to become "a productive, desirable member of our society." The BIA did not abuse its discretion in arriving at this conclusion.
 
 III
 
 20
 In addition to challenging the BIA's denial of section 212(c) relief, Morell-Acosta challenges the BIA's denial of his application for asylum under section 208(a) of the Act, 8 U.S.C. § 1158(a), and withholding of deportation under section 243(h) of the Act, 8 U.S.C. § 1253(h).[3] We review the BIA's denial of asylum for an abuse of discretion. Acewicz v. INS, 984 F.2d 1056, 1061 (9th Cir.1993). The BIA's factual determinations, including the finding that an alien has failed to prove he is eligible for asylum, are reviewed under the substantial evidence standard. Id. The BIA's decision whether to withhold deportation is likewise reviewed for substantial evidence. Berroteran-Melendez v. INS, 955 F.2d 1251, 1255 (9th Cir.1992). We are limited to reviewing the decision of the BIA. Acewicz, 984 F.2d at 1059.
 
 
 21
 * The Attorney General has discretion to grant an alien asylum if he qualifies as a "refugee" under 8 U.S.C. § 1101(a)(42)(A). 8 U.S.C. § 1158(a). A refugee is a person who is unwilling to return to his native country because he has suffered past persecution or has a well-founded fear of future persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion."[4] 8 U.S.C. § 1101(a)(42)(A); Acewicz, 984 F.2d at 1061. An applicant must prove both objective and subjective fear to establish eligibility for asylum based on fear of future persecution. Acewicz, 984 F.2d at 1061. The objective component may only be met by " 'credible, direct, and specific evidence' of facts supporting a reasonable fear of persecution." Id. (quoting Berroteran-Melendez, 955 F.2d at 1256).
 
 
 22
 The BIA determined that Morell-Acosta failed to prove his eligibility for asylum because he failed to offer proof of past persecution or of a well-founded fear of future persecution. We agree. Morell-Acosta testified that, among other things, he was struck by a superior officer while he was in the military because he got dirt on the man's bed sheets, that he did not want to serve in the army, and that he was placed in a mental institution. While he may have faced difficulties in Cuba, no evidence was offered that any of these difficulties were the result of his race, religion, nationality, social group, or political opinion. He did not suffer past persecution and he did not have an objectively reasonable fear of future persecution. He is ineligible for asylum.
 
 B
 
 23
 Because Morell-Acosta failed to demonstrate his eligibility for asylum, he has also failed to meet the more difficult burden of establishing that he is entitled to withholding of deportation. Acewicz, 984 F.2d at 1062.
 
 IV
 
 24
 The BIA properly considered and weighed the evidence supporting Morell-Acosta's applications for relief from deportation. We deny his petition for review.
 
 
 25
 Review DENIED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Morell-Acosta further claims that the BIA failed to consider his rehabilitation after committing the crimes. No evidence of rehabilitation was presented, however, so no abuse of discretion was possible. The mere fact that he completed his probation and the Sheriff's Work Alternative Program, as he was required to do under his sentence, does not indicate rehabilitation
 
 
 [2]
 Because the BIA did not consider Morell-Acosta's mental retardation as a per se negative factor, we need not determine whether it would have been an abuse of discretion to do so
 
 
 [3]
 In addition to citing sections 208(a) and 243(h) of the Act to support his argument that he should not be deported, Morell-Acosta cites the United Nations Protocol Relating to the Status of Refugees, 19 U.S.T. 6223, T.I.A.S. No. 6577, to which the United States acceded in 1968. Congress sought to follow the protocol in enacting United States refugee law. INS v. Cardoza-Fonseca, 480 U.S. 421, 436-39 and 439 n. 22 (1987). The protocol provides no relief in excess of that available in sections 208(a) and 243(h)
 
 
 [4]
 Morell-Acosta argues that the Cubans who came to the United States in the Mariel boatlift were automatically given refugee status when they entered the United States. He is incorrect. He was, like most of the Mariel Cubans, paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5), not given refugee status. See, e.g., 52 Fed.Reg. 48,799, 48,799 (1987) (explaining parole program for Mariel Cubans)