85 F.3d 637
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Roger D. PENA-CABRERA, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-70827.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 10, 1996.*
Decided May 10, 1996.
 
 1
 Before: NORRIS and WIGGINS, Circuit Judges and JONES,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Roger Danilo Pena-Cabrera ("Pena") petitions for review of the Board of Immigration Appeals' ("BIA") denial of his asylum application. Pena challenges the BIA's determination that he did not demonstrate a well-founded fear of persecution due to his family members' political opinion. We DENY the petition.
 
 FACTS
 
 4
 Pena, a 35-year-old native of Nicaragua, entered the United States without inspection on June 12, 1985. On July 9, 1987, Pena filed an application for asylum with the Immigration and Naturalization Service ("INS"), which was denied. On May 3, 1989, the INS issued an order to show cause, alleging that Pena was deportable under § 241(a)(2) of the Immigration and Naturalization Act ("INA"). Pena conceded that he was subject to deportation but renewed his request for asylum.
 
 
 5
 At the August 17, 1989 hearing before the Immigration Judge ("IJ"), Pena testified that he feared persecution by the Sandinistas upon his return to Nicaragua because of his family members' political affiliations. His father had been an civilian engineer employed by the National Guard during Somoza's regime. His brother Renato had formerly been a member of the National Guard and later became an official representative and spokesperson for the Nicaraguan Democratic Force ("FDN") in Northern California.[1] Pena testified that due to these affiliations, the Sandanistas considered his family to be "enemies"; he and his family had difficulty obtaining coupons to buy items such as food and gasoline.
 
 
 6
 Pena also testified that he was arrested in 1980 by the Sandinista police when he attempted to change a fifty dollar bill at the National Bank of Nicaragua. Pena was detained for five to six days, apparently on suspicion of violating the currency laws. During his detention, he was interrogated repeatedly about the source of the money and kept for 24 hours in a small cell, standing in freezing water and without clothes. Pena was released because the police "were not able to prove anything against [him]."
 
 
 7
 Pena further testified that while in Nicaragua, he worked at the National Autonomous University as an accountant in the purchasing department and then at the Ministry of Education. He left his position at the Ministry because "it was also run by the Sandinistas." He was selected for the national soccer team, and therefore was not required to report for military service. A few weeks after he stopped playing soccer, he left Nicaragua. Pena testified that he "left Nicaragua because there's no future for nothing; you can't live there, you can't work there. They do bad things to you."[2] When asked whether he continued to fear persecution given the change in government, he acknowledged that the president had changed, but stated that the Sandinistas continued to run the military and the police.
 
 
 8
 After considering Pena's testimony and several exhibits (including Renato Pena's successful asylum application, the Order of Capture related to Pena's 1980 arrest and newspaper articles discussing President Violeta Chamorro's regime), the IJ denied Pena's asylum application and, correspondingly, his application for withholding from deportation. The IJ found that Pena had failed to establish past persecution based on his political opinion. He concluded that the 1980 arrest was not politically motivated, but rather for a currency violation. The IJ noted that Pena was employed while in Nicaragua, and received other benefits, including exemption from the draft.[3]
 
 
 9
 In addition, the IJ found that Pena had failed to demonstrate a well-founded fear of future persecution. Pena acknowledged that Chamorro was democratically elected; moreover, the IJ concluded that the articles submitted by Pena, taken as a whole, did not evidence any general policy of persecution in Nicaragua. Further, the IJ noted that Pena's family members, such as his mother, were living in Nicaragua without suffering persecution. The IJ also expressed doubts that Pena had a subjective fear of persecution on qualifying grounds, given his testimony that "he did not know what would happen in Nicaragua in the future."[4]
 
 
 10
 Pena appealed the IJ's decision to the BIA. The BIA affirmed the IJ's denial of asylum "based upon and for the reasons set forth in that decision." Pena petitioned this court for review of the BIA's determination that he did not have a well-founded fear of persecution.[5]
 
 DISCUSSION
 I. STANDARD OF REVIEW
 
 11
 "The BIA's determination regarding refugee status must be upheld if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.' " Ubau-Marenco v. I.N.S., 67 F.3d 750, 754 (9th Cir.1995) (citations omitted), overruled in part by Fisher v. I.N.S., --- F.3d. ----, 96 Cal.Daily Op.Serv. 2252 (9th Cir. April 2, 1996) (No. 91-70676) (en banc).[6] Factual findings underlying the decision, including whether the alien has proved a well-founded fear of persecution, are reviewed for substantial evidence. Ghaly, 58 F.3d at 1431. This review is extremely deferential, and petitioner "must demonstrate 'that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution.' " Id. (quoting I.N.S. v. Elias-Zacarias, 502 U.S. 478, 483, 112 S.Ct. 812, 816 (1992)).
 
 
 12
 II. THE BIA'S DETERMINATION THAT PENA FAILED TO SHOW A WELL-FOUNDED FEAR OF FUTURE PERSECUTION IS SUPPORTED BY SUBSTANTIAL EVIDENCE.
 
 
 13
 Pena contends on appeal that the BIA erred in concluding that he did not have a well-founded fear of persecution due to (1) his brother's and father's respective positions in the FDN and Somoza's National Guard and (2) the fact that his brother, a similarly situated applicant, had been granted asylum. Both contentions lack merit.
 
 
 14
 The Attorney General has discretion to grant political asylum to any alien she determines to be a "refugee" under 8 U.S.C. § 1101(a)(42)(A). 8 U.S.C. § 1158(a). A "refugee" is defined as any alien "who is unable to unwilling to return to ... [his native] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); Ubau-Marenco, 67 F.3d at 753. Moreover,
 
 
 15
 [t]o establish eligibility on the basis of a "well-founded fear of persecution," the aliens' fear of persecution must be both subjectively genuine and objectively reasonable. The objective component requires a showing by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution. The applicant has the burden of making this showing.
 
 
 16
 Ghaly, 58 F.3d at 1428 (citations omitted). "Even a ten percent chance that the occurrence will take place can be enough to establish a well-founded fear." Blanco-Comarribas v. I.N.S., 830 F.2d 1039, 1042 (9th Cir.1987).
 
 
 17
 Pena first argues that "neither the Board nor the Immigration Judge reviewed the issue of whether petitioner would face persecution on the basis of an imputed political opinion, due to his brother's position in an organization which was waging a war to overthrow the Sandinista government." This is incorrect.
 
 
 18
 Imputed political opinion can be a valid basis for granting asylum relief. Singh v. Ilchert, 63 F.3d 1501, 1509 (9th Cir.1995). "We have held that, on limited occasions, certain conscious and deliberate acts or decisions by an alien may establish a well-founded fear of persecution on account of imputed political opinion, but only when a persecutor attributes political beliefs to the alien as a result of these acts or decisions." Estrada-Posadas v. I.N.S., 924 F.2d 916, 919 (9th Cir.1991) (citations omitted); see also Desir v. Ilchert, 840 F.2d 723, 728-29 (9th Cir.1988); Hernandez v. Ortiz, 777 F.2d 509, 516-17 (9th Cir.1985) (it was appropriate to infer that incidents all directed at members of the same family were politically motivated).
 
 
 19
 Here, the IJ specifically noted that Pena's brother was a member of the National Guard prior to the revolution and subsequently became a member of the FDN and that Pena's father had been a civilian employee of the National Guard as well. However, the IJ's finding that Pena failed to demonstrate that he had a well-founded fear of persecution due to his family members' political opinions is supported by substantial evidence: (1) Pena was not in the National Guard or the FDN, (2) Pena's arrest in 1980 was due to a currency violation, (3) Pena had maintained employment prior to his departure from Nicaragua, (4) Pena's mother and brother live in Nicaragua and are not subject to persecution due to their family affiliations, and (5) Pena acknowledged that Nicaragua now has a democratically elected president. Pena failed, therefore, to demonstrate that the Sandinistas attributed his family members' political opinion to him and persecuted him--or would persecute him--on account of that opinion. See Estrada-Posadas, 916 F.2d at 919.
 
 
 20
 Pena next argues that the BIA failed to consider that his brother, a similarly situated person, was granted asylum. An alien need not show that he would be singled out individually if there is a pattern or practice of persecution of groups of persons similarly situated based on qualifying grounds. Kotasz v. I.N.S., 31 F.3d 847, 852-53 & n. 8 (9th Cir.1994) (citing 8 C.F.R. § 208.13(b)(2)(i)). When claiming to be similarly situated to a family member, the petitioner must show that the persecution against a family member is tied to him. See Prasad v. I.N.S., 47 F.3d 336, 340 (9th Cir.1995) ("[A]ttacks on family members do not necessarily establish a well-founded fear of persecution absent a pattern of persecution tied to the petitioner."). Moreover, the treatment of other family members remaining in Nicaragua is relevant to a petitioner's claim. See Rodriguez-Rivera v. I.N.S., 848 F.2d 998, 1006 (9th Cir.1988) (fact that family continued to live in El Salvador unmolested undercut petitioner's claim of well-founded fear of persecution).
 
 
 21
 Here, there is substantial evidence to support the IJ's rejection of Pena's claim that he was similarly situated to his brother Renato. First, the IJ specifically noted that Pena's brother Renato, an organizer of the FDN in Northern California, was granted asylum. Pena, however, unlike his brother, held no position in the Somoza National Guard or in the FDN. Moreover, Pena lived in Nicaragua without being persecuted due to his family ties and Pena's mother and brother are currently living in Nicaragua without being persecuted as well.
 
 CONCLUSION
 
 22
 For the foregoing reasons, we DENY the petition and AFFIRM the BIA's denial of asylum.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 Hon. Napoleon A. Jones, Jr., United States District Judge for the Southern District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 His brother Ricardo left Nicaragua for Mexico in 1979 after deserting from the air force. His aunt and her husband, a writer for "La Prensa," also were forced to leave Nicaragua
 
 
 [2]
 Pena's request for asylum stated that he left Nicaragua to evade the military draft
 
 
 [3]
 The IJ also found that although Pena complained of the currency regulations, lack of work and his inability to obtain ration cards, Pena had not cooperated with the organization that issued ration cards and was able to maintain employment and feed himself
 
 
 [4]
 Lastly, the IJ rejected Pena's application for withholding of deportation because Pena failed to establish a clear probability that he would be persecuted
 
 
 [5]
 Pena does not challenge the BIA's determination that he did not meet his burden of showing past persecution
 
 
 [6]
 We note that the BIA conducted a de novo review of the IJ's decision, as it independently reviewed the issues on appeal, the record and the IJ's decision. Cf. Yepes-Prado v. I.N.S., 10 F.3d 1363, 1366-67 (9th Cir.1993) (BIA did not conduct de novo review where it did not state that it was conducting its own examination of the record or exercising its discretion independently). In addition, the BIA affirmed the IJ's decision for the reasons set forth by the IJ, thus incorporating the IJ's reasoning by reference. See Alaelua v. I.N.S., 45 F.3d 1379, 1382 (9th Cir.1995). Thus, we review the BIA's decision and the IJ's decision as incorporated into the BIA's opinion. See Ghaly v. I.N.S., 58 F.3d 1425, 1430 (9th Cir.1995)