Carmen Miranda De GONZALEZ,
Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 92–3555.

United States Court of Appeals,
Sixth Circuit.

Argued March 8, 1993.

Decided June 10, 1993.

Steve Blanton (argued and briefed), Cent. Kentucky Legal Services, Lexington, KY, for petitioner.

Nicholas J. Pantel, Asst. U.S. Atty., Office of the U.S. Atty., Cincinnati, OH, Robert Kendall, Jr., Emily A. Radford (argued and briefed), U.S. Dept. of Justice, Immigration Litigation, Civ. Div., Washington, DC, Nora K. Duncan, Office of I.N.S., Oakdale, LA and Barbara L. Beran, Office of the U.S. Atty., Columbus, OH, for respondent.

Before: JONES and GUY, Circuit Judges; and COHN, District Judge.*

COHN, District Judge.

## I.

This is an immigration appeal. Petitioner, Carmen Miranda de Gonzalez (Gonzalez), proceeding in forma pauperis, appeals the denial by the Board of Immigration Appeals (BIA) of her request for relief from deportation. For the reasons that follow, the BIA will be affirmed.

---

* The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. 8 U.S.C. § 1251 provides in relevant part:

   (a) Any alien (including an alien crewman) in the United States shall, upon the order of the Attorney General, be deported if the alien is within one or more of the following classes of deportable aliens:
   (2) Criminal offenses
   (A) General Crimes
   (iii) Aggravated felony

## II.

Gonzalez was admitted into the United States as an immigrant on May 27, 1981 at age twenty six. On October 18, 1990, Gonzalez was convicted of: (1) conspiracy to possess with intent to distribute 500 grams or more of cocaine; and (2) possession with intent to distribute approximately 2 kilograms of cocaine. Also on October 18, 1990, the Immigration and Naturalization Service (INS) initiated deportation proceedings against Gonzalez, charging that she was deportable under 8 U.S.C. § 1251(a)(2)(A)(iii) (aggravated felony) and 8 U.S.C. § 1251(a)(2)(B)(i) (controlled substances).[1] At the deportation hearing before an immigration judge (IJ), Gonzalez conceded deportability under those sections and she requested a discretionary waiver of deportation as permitted under section 212(c). 8 U.S.C. § 1182(c). On November 20, 1991, the IJ found that Gonzalez was deportable as charged, denied the request for section 212(c) relief, and ordered Gonzalez deported to Mexico. Gonzalez appealed to the BIA. On May 11, 1992, the BIA issued an opinion dismissing the appeal finding that the IJ did not err in deciding that Gonzalez had not established rehabilitation. This appeal followed.

## III.

### A.

Gonzalez asserts that the BIA abused its discretion in denying the application for relief under section 212(c). 8 U.S.C. 1182(c). Section 212 provides, in relevant part:

(a) Classes of excludable aliens

Except as otherwise provided in this chapter, the following describes classes of

Any alien who is convicted of an aggravated felony at any time after entry is deportable.
(B) Controlled substances
(i) Conviction
Any alien who at any time after entry has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

excludable aliens who are ineligible to receive visas and who shall be excluded from admission to the United States:

\* \* \* \* \* \*

(2) Criminal and related grounds.—

(A) Conviction of certain crimes

(i) In general

Except as otherwise provided in clause (ii), any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of—

(I) a crime involving moral turpitude (other than a purely political offense), or

(II) a violation of (or a conspiracy to violate) any law or regulation of a State, the United States, or a foreign country *relating to a controlled substance* (as defined in section 802 of Title 21),

is excludable.

\* \* \* \* \* \*

(c) Nonapplicability of subsection (a)

Aliens lawfully admitted for permanent resident who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be *admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section* (other than paragraphs (3) and (9)(C)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title. The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.[2] (Emphasis added).

8 U.S.C. § 1182(a), (c). Section 212(c), on its face, applies to aliens returning to the United States from abroad and gives the Attorney General the discretion to admit them although they may be excludable under 8 U.S.C. § 1182(a). However, it is well settled that section 212(c) relief also applies to deportation of a lawfully admitted alien with an unrelinquished domicile of seven consecutive years.[3] *See, e.g., Ashby v. INS,* 961 F.2d 555, 557 and n. 2 (5th Cir.1992) and cases cited therein.

The discretionary authority vested in the Attorney General, including the discretion described in section 212(c), was delegated to the Commissioner of Immigration and Naturalization and the Executive Office of Immigration Review as follows:

Without divesting the Attorney General of any of his powers, privileges, or duties under the immigration and naturalization laws, and except as to the Executive Office, the Board, the Office of the Chief Special Inquiry Officer, and Special Inquiry Officers, there is delegated to the Commissioner [of Immigration and Naturalization] the authority of the Attorney General to direct the administration of the [Immigration and Naturalization] Service and to enforce the Act and all other laws relating to the immigration and naturalization of aliens. The Commissioner may issue regulations as deemed necessary or appropriate for the exercise of any authority delegated to him by the Attorney General, and may redelegate any such authority to any other officer or employee of the Service.

8 C.F.R. § 2.1

The Executive Office of Immigration Review shall be headed by a Director, who shall be responsible for the general supervision of the Board of Immigration Appeals and the Office of the Chief Immigration Judge in execution of their duties in accordance with 8 C.F.R. part 3. The Director may redelegate the authority delegated to him by the Attorney General to the Chairman of the Board of Immigration Appeals or the Chief Immigration Judge. The Director shall be assisted in the per-

---

2. The last sentence was added by § 511(a) of the Immigration Act of 1990, P.L. 101–649, Nov. 29 1990, 104 Stat. 4978, 5052, applicable to admissions occurring after November 29, 1990.

3. Thus, an alien that is deportable under 8 U.S.C. § 1251(a) may apply for a waiver from the Attorney General under the excludability provision of 8 U.S.C. § 1182(c).

formance of his duties by an Executive Assistant.

8 C.F.R. § 3.0

(a)(1) *Organization.* There shall be in the Department of Justice a Board of Immigration Appeals, subject to the general supervision of the Director, Executive Office for Immigration Review. The Board shall exercise so much of the immigration and nationality law as he may delegate to it.

\* \* \* \* \* \*

(b) *Appellate jurisdiction.* Appeals shall lie to the Board of Immigration Appeals from the following:

\* \* \* \* \* \*

(3) Decisions of immigration judges on applications for the exercise of the discretionary authority contained in section 212(c) of the Act as provided in part 212 of this chapter.

8 C.F.R. § 3.1(a), (b).

### B.

The BIA looks to its decision in *Matter of Marin,* 16 I & N Dec. 581, 582–83 (BIA 1978), as establishing the criteria for the exercise of discretion in these kinds of cases. As to Section 212(c), the BIA has observed that

[It] does not provide an indiscriminate waiver for all who demonstrate statutory eligibility for such relief. Instead, the Attorney General or his delegate is required to determine as a matter of discretion whether an applicant warrants the relief sought. The alien bears the burden of demonstrating that his application merits favorable consideration.

*See also Ashby v. INS,* 961 F.2d 555, 557 (5th Cir.1992) (Attorney General has unusually broad discretion in granting and denying 212(c) waivers. The burden of demonstrating that waiver should be granted is with the alien.) As to the criteria pursuant to which the IJ is required to determine each case on its merits by balancing the equities, the BIA has said:

The immigration judge must balance the adverse factors evidencing an alien's unde-

sirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of section 212(c) relief appears in the best interest of this country.

In order to provide the framework for an equitable application of discretionary relief, the Board has enunciated factors relevant to the issue of whether section 212(c) relief should be granted as a matter of discretion. Among the factors deemed adverse to a respondent's application have been the nature and underlying circumstances of the exclusion ground at issue, the presence of additional significant violations of this country's immigration laws, the existence of a criminal record and, if so, its nature, recency, and seriousness, and the presence of other evidence indicative of a respondent's bad character or undesirability as permanent resident of this country. (citations omitted)

Although in an individual case, one or more of these adverse factors may ultimately be determinative of whether section 212(c) relief is in fact granted, their presence does not preclude a respondent from presenting evidence in support of a favorable exercise of discretion. (citation omitted) Favorable considerations have been found to include such factors as family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred while the respondent was of young age), evidence of hardship to the respondent and family if deportation occurs, service in this country's Armed Forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character (e.g., affidavits from family, friends, and responsible community representatives).

*Matter of Marin,* 16 I & N Dec. at 584–85. In cases, such as this, where the applicant has been recently convicted of a serious criminal offense, the discretionary waiver according to the BIA is to be granted only upon a demonstration that there are "unusual or

outstanding equities" favoring relief. *Matter of Marin,* 16 I & N Dec. at 586.

### C.

■ Decisions of the BIA are reviewable under an abuse of discretion standard. *Balani v. INS,* 669 F.2d 1157 (6th Cir.1982). This Court has observed:

> There is no exact measure of what constitutes abuse of discretion. It is more than the substitution of the judgment of one tribunal for that of another. Judicial discretion is governed by the situation and circumstances affecting each individual case. "Even where an appellate court has power to review the exercise of such discretion, the inquiry is confined to whether such situation and circumstances clearly show an abuse of discretion, that is, arbitrary action not justifiable in view of such situation and circumstances."

669 F.2d at 1161 (quoting *NLRB v. Guernsey–Muskingum Electric Co-op, Inc.,* 285 F.2d 8, 11 (6th Cir.1960), quoting, *Hartford–Empire Co. v. Obear–Nester Glass Co.,* 95 F.2d 414, 417 (9th Cir.1948)). This Court has described the appropriate standard of review as follows:

> In determining whether the Board [of Immigration Appeals] abused its discretion, this Court must decide whether the denial of Petitioner's motion ... was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.

*Balani,* 669 F.2d at 1161. See also *Casalena v. INS,* 984 F.2d 105, (4th Cir.1993). The BIA's decision will be upheld unless it is arbitrary or capricious.

### IV.

### A.

At the hearing before the IJ, Gonzalez testified, as did two friends and her sister. Gonzalez also submitted affidavits and other documentary evidence in support of her application. The evidence presented to the IJ was as follows:

Gonzalez entered the United States in 1973 or 1974 and was lawfully admitted to permanent residence in 1981. Gonzalez and her husband, Hector Gonzalez–Barrera, separated in 1982. Gonzalez has three children: Hector Gonzalez–Miranda, born in McAllen, Texas, who, at the time of the hearing before the IJ, was 17 years old and residing with friends in McAllen, Texas; Eric Gonzalez, age 11, born in Corpus Christi, Texas; and Reylando Reyes, age 1½, born in McAllen, Texas. The two younger children reside with Gonzalez's sister in Corpus Christi.

The events surrounding Gonzalez's arrest and conviction were described. She denied culpability and maintained that others were engaged in criminal activity but that she was unaware of it. Gonzalez had been employed as a seamstress and expects to return to that trade after incarceration.

Deportation to Mexico will result in hardship to her and her sons according to Gonzalez. Specifically, her father is an alcoholic with a history of abusing her and her siblings. This was corroborated by her sister and her friend. Gonzalez is fearful of returning to the family home in Reynoso, Mexico. She believes that her sons' education will suffer if she is deported to Mexico and that, because of their limited fluency in Spanish and their American citizenship, they would be subject to discrimination in Mexico. Gonzalez has been active in her church and performed a great deal of community service. A prison staff person, who had never written a letter in support of a prisoner in his ten years of employment, wrote a letter on Gonzalez's behalf indicating that while she was assigned to his detail she arrived timely, made useful suggestions on how to accomplish tasks, helped others with their work, and treated the prison staff with respect.

### B.

The IJ considered the testimony and evidence in a manner consistent with the *Marin* balancing approach and the factors enumerated by the BIA and concluded that Gonzalez had not demonstrated sufficiently outstanding or unusual equities to warrant section 212(c) relief. The IJ stated:

In the instant case, the respondent has been convicted of conspiracy to possess with intent to distribute 500 grams or more of cocaine. She has also been convicted of possession with intent to distribute cocaine. This is a serious adverse factor in the exercise of discretion, and requires a showing of outstanding or unusual equities.

The respondent's life in Mexico before coming to the United States was very unpleasant. However, this situation is in the past and not something that should be considered in the exercise of discretion. The respondent is now an adult and should no longer fear abuse from her father.

The respondent has been a lawful permanent resident of the United States for over ten years. Her lawful residence commenced when she was an adult. The respondent's testimony indicates that, before obtaining the status of a lawful permanent resident, she was a mala fide nonimmigrant visitor who overstayed her period of admission. She has demonstrated the existence of family ties in the United States, and her children may well suffer hardship as the result of her deportation. Their hardship is diminished by the fact that they and the respondent have often lived in close proximity to the border between the United States and Mexico. The respondent has not demonstrated why her children could not remain temporarily in the United States with relatives to complete their education or could not reside with her on the Mexican side of the border and attend school on the American side.

Considering the nature, recency and severity of the respondent's offense, a positive showing of rehabilitation should be made. The respondent has not done so. She seeks to place the blame of her offense on her co-defendants and does not accept responsibility for her own actions. The Board of Immigration Appeals has determined that an Immigration Judge may not reassess an alien's ultimate guilt or innocence of a criminal conviction; *Matter of Roberts,* Int.Dec. 3148 (BIA 1991). Therefore, I am bound by the record of conviction, and must consider the respondent to be guilty of the offense for which he[sic]

was convicted. I also note that the decision of the Appellate Court describes a greater level of participation in the criminal scheme than the respondent has admitted at hearing. For these reasons, I find that rehabilitation has not been established.

The respondent has demonstrated many occasions of her community service. These instances are commendable, but do not rise to the level of an outstanding or unusual equity.

### C.

#### 1.

On appeal to the BIA, Gonzalez assigned error to the IJ's finding of no rehabilitation. In support, Gonzalez asserted that she was a model inmate and had demonstrated rehabilitation to the extent possible by an inmate. Gonzalez also assigned error to the implication in the IJ's decision that rehabilitation is an absolute prerequisite to a favorable exercise of discretion.

The BIA concluded that the IJ had not erred in finding that Gonzalez had not established rehabilitation. The BIA reasoned that the IJ was reasonable in doubting her rehabilitation because of the inconsistency between Gonzalez's recognition of guilt and her claims that she was unaware of the activity of her co-defendants.

However, the BIA did conclude that the IJ "erred to the extent that he made a showing of rehabilitation an absolute prerequisite for a consideration of relief." The BIA stated: "Such a showing is not an absolute prerequisite, however, but is merely another factor, albeit an important one, to be considered by the immigration judge and this Board."

#### 2.

Gonzalez also asserted that the single adverse factor of her criminal conviction was outweighed by the favorable factors and assigned error to the IJ's conclusion that, on balance, discretionary relief was not warranted.

The BIA found meritorious Gonzalez's assertion that the IJ had engaged in inappro-

priate speculation when he opined that the hardship on the Gonzalez children would be lessened if they were to attend school on the American side of the border. The BIA thus disregarded the possibility of such an arrangement in its consideration of the relevant factors. The BIA balanced the relevant factors and concluded that discretionary relief was not warranted:

> The respondent argues that the immigration judge erred by failing to adequately consider the respondent's favorable personal equities, including her history of community service, the glowing reports of her character, and her full payment of taxes and her ownership of property. We have done so on appeal, and we find that, *except for the commission of a most serious drug trafficking crime,* the respondent appears to have lived a life of hard work and dedication to her family and those in need. Nevertheless, while these are indeed favorable factors, we do not find them to be dispositive of the question of whether relief is warranted in the exercise of discretion.
>
> We find that the respondent has demonstrated a number of favorable equities, including her United States citizen dependents and her good behavior in prison, and even an unusual equity in her history of charitable activities. Nevertheless, upon consideration of the record as a whole, we do not find that the respondent has demonstrated sufficient unusual or outstanding equities necessary to overcome *the very serious negative factor of her participation in the distribution of a large quantity of cocaine,* a controlled substance whose destructive effects on society are well known. (emphasis added).

### V.

### A.

In this appeal, Gonzalez asserts that the BIA abused its discretion because its denial of discretionary relief "constitutes a de facto ruling that immigrants convicted of a single, though admittedly, serious drug crime, will never warrant a favorable grant of discretionary relief even though Congress has expressed a contrary intent."

### B.

Gonzalez's contention appears to be have some merit. The INS at oral argument was asked to provide the panel with decisions of the BIA exercising 212(c) discretion in favor of an alien convicted of a drug offense so the Court could have some understanding of the manner in which the Board exercises its discretion. Although more than three thousand of BIA's decisions have been published [4], the INS has provided the panel with only a single decision, *Matter of Morrobel,* A30 924 038 (BIA March 10, 1993). The facts in *Morrobel* are far different than the facts here. Morrobel was convicted of one attempted sale of cocaine valued at $20. Although Morrobel later admitted to delivering drugs in exchange for cocaine for a period of three years, he was not convicted of such an offense. In the scheme of arrests and convictions relating to drug trafficking, a conviction for an attempt to sell $20 worth of cocaine hardly qualifies as a *serious* drug offense. The INS has not provided the Court with any other decisions, published or unpublished, in which the BIA exercised its discretion in favor of an alien convicted of a serious drug offense.

The Court recognizes that the BIA hears only a small percentage of the total number of cases heard by immigration judges and that the immigration judges are also vested with discretion to grant relief. 8 C.F.R. § 2.1. Yet this does not diminish the fact that, in cases which do eventually reach the BIA, the BIA's lack of the exercise of discretion leaves the impression that it has a policy of not granting a 212(c) waiver in a case where an alien has been convicted of a serious drug offense. Such a policy, if it does exist, appears to be an unauthorized assumption by the INS of a position properly to be made by the Congress.

Courts and administrative agencies are given discretionary power in order to individualize the application of law, make it flexible

---

4. United States Department of Justice, Legal Activities 1992–1993, p. 69 (1992).

and adaptable to circumstances.[5] Without it, the law is apt to be criticized as harsh, unfeeling and unjust.[6] In deportation cases, the Attorney General or her designees, in this case the INS and the BIA, are entrusted with the authority to exercise discretion in order to ameliorate the harsh results that deportation wrecks on aliens and their families by allowing, in certain circumstances, a waiver of deportation.[7] The BIA's failure to exercise its discretion may well be an abuse of discretion.[8]

Two additional observations are in order. First, the BIA does not keep statistics of grants and denials of 212(c) relief with regard to drug cases or, indeed, any cases other than the gross numbers of appeals. Second, the consequences of the BIA decisions denying relief have a substantial impact on Hispanics since approximately 52% of the federal prison population are drug offenders, the number of Hispanic drug offenders is approximately 32.5% and the number of foreign citizens among the drug offender population is 29.2%.[9] From October 1, 1991 through September 30, 1992, 28.2% of those sentenced under the United States Sentencing Guidelines for drug trafficking and 28.9% of those sentenced under the Guidelines for simple possession of drugs were not citizens of the United States. The Hispanic population accounted for 31.5% of those sentenced for drug trafficking and 34.3% of those sentenced for simple drug possession.[10] During the same period, 21.6% of those sentenced under the Guidelines were foreign citizens and of that number 45.5% were citizens of Mexico.[11]

## C.

### 1.

The foregoing observations notwithstanding, given the facts of this case, the Court reluctantly concludes that this is not one in which the Court can say that the BIA's failure to exercise discretion in favor of waiver was an abuse of discretion. Under the statute, the burden of establishing that discretionary relief is warranted is on Gonzalez, as is the burden of demonstrating that the BIA decision "was made without rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Balani,* 669 F.2d at 1161.

### 2.

Gonzalez asserts that the BIA committed an error of law by failing to find that she is rehabilitated. In support, Gonzalez asserts that the BIA failed to consider (1) her criminal history is limited to a single drug conviction; (2) she has been a model prisoner; and (3) she plans to be a productive member of society after release from prison. Gonzalez further asserts that the BIA erred in requiring an admission of guilt as a prerequisite to a finding of rehabilitation.

This argument lacks merit. There is just no showing that the BIA acted in an irrational or impermissible manner. In the first instance, the opinion of the BIA reflects that Gonzalez's limited criminal history, her pris-

---

**5.** David M. Walker, *The Oxford Companion to Law,* p. 363 (1980).

**6.** *Id.*

**7.** "Deportation is a drastic measure and at times the equivalent of banishment or exile ..." It is the forfeiture for misconduct of a residence in this country. Such a forfeiture is a penalty. *Jordan v. DeGeorge,* 341 U.S. 223, 231, 71 S.Ct. 703, 708, 95 L.Ed. 886 (1951).

**8.** *Vinci v. Consolidated Rail Corp.,* 927 F.2d 287, 288 (6th Cir.1991) (The failure to exercise discretion can also constitute an abuse of discretion); *United States ex rel. Berman v. Curran,* 13 F.2d 96 (3rd Cir.1926) (exclusion of aliens under sixteen

unaccompanied by or not coming to a parent was, in view of their qualification for admission, an abuse of discretion because of a failure to exercise discretion). *See also Taylor v. Social Sec. Admin.,* 842 F.2d 232, 233 (9th Cir.1988); and *U.S. v. Davis,* 900 F.2d 1524, 1531 (10th Cir.1990).

**9.** The statistics were obtained from the Federal Bureau of Prisons, Office of Research and Evaluation.

**10.** United States Sentencing Commission, Annual Report, Table 12 (1992).

**11.** United States Sentencing Commission, Annual Report 1992, Tables 16 and 17 (1992).

on conduct, and her future plans were all considered by the BIA. The conclusion that rehabilitation had not been demonstrated, the motivating reason in the BIA's decision, rested on the inconsistent positions taken by Gonzalez. The Court is unable to say that the BIA acted in an irrational or impermissible manner regarding Gonzalez's persistence that the guilt was her co-defendants' alone as supporting a conclusion that she was not rehabilitated.

### 3.

Gonzalez next asserts that the BIA did not consider the effect of her deportation on her dependents. The record reflects that the BIA did, indeed, consider this hardship as a relevant factor but was not convinced that the effects of deportation outweighed the lack of rehabilitation.

### VI.

■ The essence of Gonzalez's appeal is that the BIA should have concluded that she warranted discretionary relief under section 212(c). What Gonzalez invites the Court to do is to substitute its determination for that reached by the BIA in the face of a finding by the BIA that she had not demonstrated rehabilitation. In the absence of a demonstration that the BIA acted in an irrational or impermissible manner, the Court may not rebalance the equities. The fact that it may have reached a different result is inapposite as well.

Accordingly, the Court in this case reluctantly will not disturb the determination on whether the discretionary authority of the Attorney General should be interposed to spare Gonzalez from deportation for her drug conviction. The BIA is AFFIRMED.

■

* ("OWCP").