DUDLEY'S COMMERCIAL AND
INDUSTRIAL COATING,
INC., Plaintiff

v.

UNITED STATES INTERNAL REV-
ENUE SERVICE, Commissioner
of Revenue, Defendants.

No. 3:02–0106.

United States District Court,
M.D. Tennessee,
Nashville Division.

March 17, 2003.

Mark Harrington Westlake, Westlake & Marsden, Nashville, TN, for plaintiff.

Richard Fox Clippard, Office of the United States Attorney, Nashville, TN, Jason S. Zarin, Department of Justice, Washington, DC, for defendant.

### MEMORANDUM

HAYNES, District Judge.

Plaintiff, Dudley's Commercial and Industrial Coating, Inc. ("Dudley's"), filed this action pursuant to the tax collection due process provisions of 26 U.S.C. § 6330 against the Defendant. United States Internal Revenue Service ("IRS"). The gravamen of Plaintiff's claim is that Defendant abused its discretion in determining that Plaintiff's proposed installment agreement should be rejected in favor of a levy against Plaintiff's assets.

Before the Court is Defendants's motion for summary judgment (Docket No. 14) and Plaintiff's motion for summary judgement (Docket Entry No. 18) for which oral argument was held March 14, 2003 (Docket No. 22).

As stated in oral argument and on brief, Defendant contends in sum, that all procedural requirements of 26 U.S.C. § 6330 were satisfied and that the IRS appeals officer did not abuse its discretion by rejecting Plaintiff's proposed installment agreement on grounds that: (1) Plaintiff had a long history of non-compliance with federal tax laws; (2) Plaintiff did not have the financial ability to pay current operating expenses and current taxes; (3) the proposed installment agreement would not fully pay the taxes before the Collection Statute Expiration Date ("CSED") with a five-year extension; and (4) Plaintiff had a documented history of not keeping its commitments to resolve tax problems.

Plaintiff responds, in sum, that the appeals officer's refusal to accept an installment payment agreement in lieu of the proposed levy action was an abuse of discretion on grounds that: (1) the appeals officer incorrectly concluded that the proposed installment agreement would not pay in full the outstanding tax liability within the applicable collection statute of limitations; (2) the proposed monthly payment represented a reasonable collection alternative and that its rejection was an abuse of discretion; (3) the appeal's officer incorrectly concluded that Plaintiff was unable to pay its current operating expenses and current taxes; (4) the appeals officer abused its discretion by rejecting the proposed installment agreement on the basis

of Plaintiff's prior non-compliance; and (5) the IRS standard permitting the rejection of a proposed installment agreement for any reason, renders a district court's review under 26 U.S.C. § 6330(d) and empty appeal.

For the reasons set forth below, the Court concludes that Defendant's motion for summary judgement (Docket Entry No. 14) should be granted and Plaintiff's motion for summary judgement (Docket Entry No. 18) should be denied.

## A. Findings of Fact [1]

Plaintiff, Dudley's provides commercial painting services. Prior to April 2001, a substantial portion of Dudley's business included stripping and re-coating municipal water tanks and other large facilities. (Docket Entry No. 1, Complaint ¶ 5). During that time, employees of Dudley's failed to apply coatings on several large tank facilities properly and Dudley's was compelled to re-strip and re-coat the tanks at its sole cost, resulting in substantial financial losses and the inability to pay expenses that included payroll tax obligations. (Docket Entry No. 1, Complaint ¶ 6).

Plaintiff asserts that in order to recover from these financial losses, Dudley's restructured and eliminated the municipal water and large tank facilities portion of its business. (Docket Entry No. 1, Complaint ¶ 7). After restructuring, Dudley's asserts that it used contract revenue to pay delinquent payroll tax obligations at the expense of current payroll tax depos-

its. (Docket Entry No. 1, Complaint ¶ 8). Dudley's further asserts that IRS collection personnel failed to advise Dudley's that all current payroll deposits should be paid before devoting current revenue to the payment of accrued tax obligations. *Id.* Upon learning this information from counsel, Dudley's began to pay current tax obligations in April of 2001 and paid all obligations for the second, third and fourth quarters of 2001 and the first quarter of 2002. (Docket Entry No. 1, Complaint ¶ 9).

The IRS made several attempts to provide information to Dudley's and to encourage payment of Dudley's delinquent tax obligations. (Docket Entry No. 12. Administrative Record ("AR") at 91–112)(containing the IRS record of contacts, conversations and information given to Dudley's); *see also infra* p. 988–89. On August 7, 2001, the IRS sent Dudley's a notice of intent to levy, which proposed a levy to collect federal employment taxes (Form 941) for the fourth quarter of 2000 and the first quarter of 2001 and unemployment taxes (Form 940) for 1999 and 2000. (Docket Entry No. 1, Complaint ¶ 11 and Exhibit A; Docket Entry No. 12, AR at 21). The amount of the taxes at issue, including penalties and interest accrued as of that date, was $43,053. (Docket Entry No. 12, AR at 22).

On September 5, 2001, Dudley's filed a request for hearing under 26 U.S.C. § 6330. (Docket Entry No. 13, AR Supplement, Exhibit I at unnumbered page 4).

---

1. Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion, for summary judgment. *Duchon v. Cajon Co.,* 791 F.2d 43, 46 (6th Cir.1986) *app.* 840 F.2d 16 (6th Cir.1988) (unpublished opinion). As discussed *infra,* under recent Supreme Court holdings, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed ver-

dict, *Anderson v. Liberty Lobby,* 477 U.S. 242, 247–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), particularly where there has been an opportunity for discovery. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, 276 (1986). The Court concludes that under the applicable law there are not any material factual disputes. Thus, this section constitutes findings of fact under Fed. R.Civ.P. 56(d).

Scott Biggs was the appeals officer assigned to conduct the hearing. Biggs had no prior involvement with the outstanding taxes that were the subject of the proposed levy and collection due process hearing. (Docket Entry No. 12, AR at 36). The IRS Operating Division provided the appeals officer with verification that all statutory, regulatory and administrative requirements were met before the notice of intent to levy was issued. (Docket Entry No. 12, AR at 38; Docket Entry No. 14, Biggs Declaration, Exhibit 1 at ¶ 7). The liability listed on the notice of intent to levy was properly assessed.[2] *Id.*

Prior to the due process hearing, Dudley's proffered collection alternative was a suspension of all collection activity until Dudley's financial situation improved and in addition, Dudley's offered an installment agreement of $300 per month. The installment agreement was first offered to the revenue officer on June 29, 2001 (Docket Entry No. 13, AR Supplement at Exhibit H) and to the appeals office prior to the hearing on October 19, 2001 in the Form 12153 request for a collection due process hearing. (Docket Entry No. 13, AR Supplement, Exhibit I at unnumbered page 4). This form was submitted by certified mail on September 5, 2001 and stated:

> We propose to pay installments of $300 each month which substantially exceeds our available cash flow ... We request that enforced collection action be suspended on the condition that we remain current on all accruing tax deposits, payment and filing obligations ... We are current on all payroll tax deposits for the second and third quarters of 2001.

*Id.*

After considering these collection alternatives, the taxpayer's financial status and its history of non-compliance, the appeals officer determined that the issuance of a notice of levy balanced the need for efficient tax collection action with the taxpayer's interest that the collection be no more intrusive than necessary. (Docket Entry No. 12, AR at 37–38). The appeals officer prepared the appeals case memorandum reflecting what occurred during the collection due process hearing on October 19, 2001, and his subsequent investigation of Dudley's financial status and history of non-compliance. *Id.* at 36–38. On December 31, 2001, the appeals office mailed Dudley's a "Notice of Determination Concerning Collection Action Under Section 6320 and/or 6330." based upon and incorporating the appeals officer's recommendation and evaluation of the appeal hearing. *Id.* at 34–38. This determination rejected Dudley's installment agreement and imposed a levy against Dudley's receivables. *Id.* Dudley's now appeals the levy to this district court pursuant to 26 U.S.C. § 6330.

### B. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed.1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte,* so long as the opposing party was on notice that she had to come forward with all of her evidence." *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *Accord, Routman v. Automatic Data Processing, Inc.,* 873 F.2d 970, 971 (6th Cir.1989).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202

---

2. Plaintiff does not contest the veracity of the outstanding tax liability assessed to Dudley's that is at issue in this appeal.

(1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered forth with if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.* Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247–48, 106 S.Ct. 2505 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted).

■ A motion for summary judgment is to be considered after adequate time for discovery. *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment *Emmons v. McLaughlin,* 874 F.2d 351, 355–57 (6th Cir.1989). *But see Routman v. Automatic Data Processing, Inc.,* 873 F.2d 970, 971 (6th Cir.1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in *Celotex*

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.... [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

*Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." *Martin v. Kelley,* 803 F.2d 236, 239, n. 4 (6th Cir.1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. *Sims v. Memphis Processors, Inc.,* 926 F.2d 524, 526 (6th Cir.1991) (quoting *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986)). "So long as the movant has met its initial burden of demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" *Emmons v. McLaughlin,* 874 F.2d 351, 353 (6th Cir.1989) (quoting *Celotex* and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and] ... must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989) (quoting *Liberty Lobby*). Moreover, the Court of Appeals explained that:

The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

*Street*, 886 F.2d at 1480 (cites omitted). *See also Hutt v. Gibson Fiber Glass Products*, 914 F.2d 790 (6th Cir.1990) ("A court deciding a motion for summary judgment must determine whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.") (quoting *Liberty Lobby*).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

More important for present purposes, *summary judgment will not lie if the dispute about a material fact is genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.*

 &ast; &ast; &ast; &ast; &ast; &ast;

Progressing to the specific issue in this case, we are convinced that *the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the sub-stantive evidentiary standard of proof that would apply at the trial on the merits.* If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, *the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.* The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. *The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict–'whether there is [evidence] upon which a jury can properly proceed to find a perdict for the party producing it upon whom the onus of proof is imposed.'*

*Liberty Lobby*, 477 U.S. at 248, 252, 106 S.Ct. 2505, 91 L.Ed.2d at 211–212, 214 (citation omitted and emphasis added).

It is likewise true that:

[I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute....'

*Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a

light most favorable to the party opposing the motion." *Duchon v. Cajon Company,* 791 F.2d 43, 46 (6th Cir.1986) *app.* 840 F.2d 16 (6th Cir.1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion

A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." *Webster's Third New Inter National Dictionary* (1986).

Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

*InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989) *cert. denied* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). Here, the parties have given some references to the proof upon which they rely. Local Rule 8(b)(7)(A) and (C) require a showing of undisputed and disputed facts.

In *Street,* the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.

6. As on federal directed verdict motions, the scintilla rule' applies, *i.e.,* the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence

in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, [w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is implausible.

*Street*, 886 F.2d at 1479–80.

■ The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

With these legal principles in mind, the Court addresses the legal standards governing the review of the IRS collection due process hearing determination.

### 1. 26 U.S.C. § 6330

Section [*sic*] 6330 of the Internal Revenue Code ("IRC") that provides for pre-levy notice and hearing as well as judicial review of the hearing's administrative determination, was added to the IRC by section 3401 of the IRS Restructuring and Reform Act of 1998, 112 Stat. 685, 747–49.

Under 26 U.S.C. § 6330(a), the IRS is required to give notice before imposing a levy that includes notice of the right to request an administrative hearing within the 30–day period before the levy is imposed.

"If the person requests a hearing under subsection (a)(3)(B), such hearing shall be held by the Internal Revenue Service Office of Appeals." *Id.* at § 6330(b)(1). The hearing must be conducted by "an officer or employee who has had no prior involvement" with the specified unpaid tax subject to the proposed levy. *Id.* at § 6330(b)(3). Under 26 U.S.C. § 6330(c)(1), the appeals officer must obtain verification from the IRS Operating Division that all requirements of law and administrative procedure have been met.

At the hearing:

The person may raise [ ] any relevant issue relating to the unpaid tax or the proposed levy, including ... (i) appropriate spousal defenses; (ii) challenges to the appropriateness of collection actions; and (iii) offers of collection alternatives, which may include the posting of a bond, the substitution of other assets an installment agreement, or an offer-in-compromise.

26 U.S.C. § 6330(c)(2)(A)(i)-(iii).

The appeals officer, in making a determination under this section:

shall take into consideration–(A) the verification presented under paragraph (1); (B) the issues raised under paragraph (2); and (C) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary.

26 U.S.C. § 6330(c)(3)(A)-(C).

Section § 6330(d)(1)(A)-(B) also allows for judicial review of the administrative

determination by a district court, when the tax court does not have jurisdiction of the underlying tax liability, if an appeal is filed within 30 days of the determination.

## 2. Standard of Review

■ Under 26 U.S.C. § 6330, collection due process cases are reviewed under an abuse of discretion standard. Although 26 U.S.C. § 6330(d), that provides for judicial review, does not set forth the standard of review for a federal district court, the legislative history states that:

The determination of the appeal officer maybe appealed to the Tax Court or where appropriate, the Federal district court ... Where the validity of the tax liability is not properly part of the appeal, the taxpayer may challenge the determination of the appeals officer for an abuse of discretion. In such cases, the appeal officer's determination as to the appropriateness of the collection activity will be reviewed using an abuse of discretion standard of review.

H.Rep. No. 105–599 at 266 (1998); *MRCA Information Services v. United States*, 145 F.Supp.2d 194, 199 (D.Conn.2000); *Goza v. Comm'r* 114 T.C. 176, 181–82, 2000 WL 283864 (2000).

■ Although the Sixth Circuit has not yet passed on this standard in the context of 26 U.S.C. § 6330, district courts within the Sixth Circuit have adopted the abuse of discretion standard. *See Geller v. United States*, 2001–2 U.S.T.C. ¶ 50,703 (S.D.Ohio 2001); *Berkey v. Dep't of Treasury*, 2001–2 U.S.T.C. ¶ 50,708, 2001 WL 1397680 (E.D.Mich.2001). This standard is also followed by courts nationwide. *See Kitchen Cabinets, Inc. v. United States*, 2001[–1] U.S.T.C. ¶ 50,287, 2001 WL 237384 (N.D.Tex.2001); *TTK Management v. United States*, 2001–1 U.S.T.C. ¶ 50,185 (C.D.Cal.2000). In its review of the agency's exercise of discretion, the Court is limited to a review of the administrative record. *See Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973).

■ An abuse of discretion is an arbitrary action not justifiable in light of the facts and circumstances presented in the record. *Gonzalez v. INS*, 996 F.2d 804, 808 (6th Cir.1993); *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir.1982); *NLRB v. Guernsey–Muskingum Electric Coop., Inc.*, 285 F.2d 8, 11 (6th Cir.1960). The Sixth Circuit has held that an agency abuses its discretion if its decision "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis ..." *Gonzalez*, 996 F.2d at 808; *Balani*, 669 F.2d at 1161.

## 3. Plaintiff's Contention that the Appeals Officer Committed an Abuse of Discretion

Plaintiff asserts that the appeals officer abused his discretion in rejecting the Plaintiff's collection alternative in favor of a levy against Plaintiff's assets. First, Plaintiff asserts that the appeals officer incorrectly concluded that the proposed installment agreement would not pay in full the outstanding tax liability within the applicable collection statute of limitations. The appeals officer noted in his determination letter that:

IRC Section 6159(a) provides that installment agreements must fully pay taxes before the Collection Statute Expiration Date (CSED). The Service may request that a taxpayer extend the statutory period for collection in connection with an installment agreement, however, it is the policy of the I.R.S. to limit extensions to 5 years beyond the original statutory period. Your proposal will not fully pay your liability within the CSED plus five years.

(Docket Entry No. 12, AR at 38).

Plaintiff asserts that although the appeals officer correctly articulated the IRS

policy that installment agreements must fully pay delinquent taxes before the collection expiration date plus a five (5) year extension, the appeal officer misrepresented the law under IRC Section 6159(a). This statute states the following:

The Secretary is authorized to enter into written agreements with any taxpayer under which such taxpayer is allowed to satisfy liability for payment of any tax in installment payments if the Secretary determines that such agreement will facilitate collection of such liability.

26 U.S.C. § 6159(a).

 Although this Court agrees that 26 U.S.C. § 6159(a) does not *require* that installment agreements must pay delinquent taxes in their entirety before the CSED, the Court does not believe that the appeals officer committed an abuse of discretion by requiring that Dudley's pay their full liability before the CSED in light of Dudley's enumerated tax payment history.

The CSED is set forth in 26 U.S.C. § 6502(a).

Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun–

(1) within 10 years after the assessment of the tax, or

(2) if–

(A) there is an installment agreement between the taxpayer and the Secretary, prior to the date which is 90 days after the expiration of any period for collection agreed upon in writing by the Secretary and the taxpayer at the time the installment agreement was entered into . . .

If a timely proceeding in court for the collection of a tax is commenced, the period during which such tax may be collected by levy shall be extended and shall not expire until the liability for the tax (or a judgment against the taxpayer arising from such liability) is satisfied or becomes unenforceable.

26 USC § 6502(a). Here, Dudley's CSED would be ten (10) years after the taxes were assessed. The taxes that are the subject of this appeal were assessed between 1999 and the first quarter of 2001.

Plaintiff asserts that the appeals officer incorrectly concluded that Dudley's proposed installment agreement would not pay off the outstanding liability within the ten (10) year CSED. Plaintiff in essence, argues that the appeals officer should have separated the account balances and accepted the installment agreement for three of the account balances that totaled $18,487.26.[3] Plaintiff asserts that at 9% per annum (6% interest plus 3% penalty) these three account balances would be paid in full under the proposed installment agreement in 83 month or less than seven (7) years.[4] No where in the briefs or in the record does Plaintiff assert that Dudley's would be able to pay their entire outstanding liability before the CSED under their proposed installment agreement.[5]

---

3. The three account balances referred to are Form 940 taxes from 1999 ($1,883.32). Form 940 taxes from 2000 ($1,554.38) and Form 941 taxes from the first quarter of 2001 ($15,049.56). (Docket Entry No. 12, AR at 40).

4. The CSED of the earliest account would expire in 2010, therefore there are approximately eight (8) years remaining before the CSED.

5. According to this Court's calculations, even without interest or penalties, Dudley's could not pay their entire outstanding obligation within the CSED under their proposed installment agreement.

When viewing 26 U.S.C. § 6159 in light of the implementing regulations set forth in 26 C.F.R. § 301.6159–1, the IRS has broad discretion to accept or reject an installment agreement. The implementing regulation states that:

A district director, a director of a service center, or a director of a compliance center (the director) is authorized to enter into a written agreement with a taxpayer that allows the taxpayer to satisfy a tax liability by making scheduled periodic payments *until the liability is fully paid if the director determines that such an installment agreement will facilitate the collection of the tax liability ... The director has the discretion to accept or reject any proposed installment agreement.* As a condition to entering into an installment agreement with a taxpayer, the director *may* require that–

(A) The taxpayer agree to a reasonable extension of the period of limitations on collection

26 CFR §§ 301.6159–1(a)–(b) (emphasis added).

First, the Court notes that 26 C.F.R. § 301.6159–1 clearly states that the liability should be "fully paid" under any installment agreement entered into by the director. Plaintiff argues that the IRS Service Manual at Part 5 Chapter 14 § 1(7) has been modified to permit partial payment where the installment agreement would fully pay one or more tax period liabilities.

In considering this assertion, the Court initially notes that the IRS Service Manual is not binding authority on the Court or the IRS. As the Sixth Circuit has noted, the IRS Service Manual is an internal IRS document issued to instruct personnel in performing their duties, and thus, does not create any enforceable rights for taxpayers and does not have the force or effect of law. *United States v. McKee* 192 F.3d 535, 540 (6th Cir.1999);

*U.S. v. Barter Systems of Grand Rapids,* 557 F.Supp. 698 (D.C.Mich.1982). Further,

It is only when a violation of the Manual reaches the level of a constitutional violation will any action by the IRS be set aside. *See [United States v. McKee* 192 F.3d] at 541. In this case, although Defendant claims that the IRS violated its internal procedures as outlined in the Manual, he does not claim that any constitutional violation resulted therefrom.

*U.S. v. Forrester* 2001 WL 1203288, *1 (S.D.Ohio 2001).

In the IRS Manual provision cited by Plaintiff, the IRS instructs employees that:

(2) Taxpayers sometimes have the ability to make payments that satisfy some balance due accounts, but not all balance due accounts, prior to the Collection Statute Expiration Date plus five years. For these agreements, taxpayers must exhaust their ability to make full or partial payments on bal[ance][sic] due accounts before an agreement can be approved. It is not in the Service's interest to grant these installment agreements unless taxpayers are unable to fully or partially pay bal[ance][sic] due accounts.

(3) In determining whether taxpayers should be considered for one of these agreements consider:

(a) the governments potential for eventually collecting more than would be collected if the taxpayer was granted an offer in compromise ...

(b) that an installment agreement is more flexible tool for collection than is an offer in compromise. Revisions in installment agreement monthly payment amounts are allowable and easily accomplished ...

(4) Considering the above factors, base the final decision ... on determining which repayment vehicle is likely to re-

sult in the collection of the most revenue over its term . . .

(5) Only those agreements that include a balance due account that will be fully paid prior to the CSED may be approved.

(6) Consideration must be given to extending the CSED. If extending the CSED will result in greater collectability, the CSED must be extended with these agreements.

(Docket Entry No. 19, Exhibit C at 2.2(2)-(6)).

The policy enumerated in the IRS Manual does not state that the director is required to accept an installment agreement proposal if the taxpayer can satisfy some of the balance due accounts. Instead, the Manual discusses the factors to consider in determining whether to use installment agreements or offers in compromise and allows for the use of these collection methods at the discretion of the employee, but in making the decision the Manual instructs the employee to base their decision on a "determin[ation of] which repayment vehicle is likely to result in the collection of the most revenue over its term."

■ Here, the IRS employee concluded that because of Dudley's history of non-compliance and its poor financial situation that an installment agreement would not "facilitate the collection of tax liability." 26 C.F.R. § 301.6159–1(a); *see also* Docket Entry No. 12, AR at 37–38. It was the employees discretion to accept or reject an installment agreement based on what was in the best interest of the IRS as well as to decide to extend the CSED if an installment agreement was to be used as the preferred collection method. An IRS employee, as well as an appeals officer, is not required to ignore the collection statute of limitations just because they have the discretion to accept an installment agreement and "may require that [t]he taxpayer agree to a reasonable extension of the period of limitations on collection." 26 C.F.R. § 301.6159–1(b). Here the Court concludes that the appeals officer reasonably exercised his discretion under IRS policy in light of the facts contained in the record and appropriately considered the issues required in the due process hearing as proscribed under 26 U.S.C. § 6330(c)(3)(A)-(C).

■ Plaintiff's second argument is that the proposed monthly payment represented a reasonable collection alternative and that the appeals officer's rejection of the installment agreement was an abuse of discretion. As discussed above, it is the IRS employee's discretion to accept or reject an installment agreement based on the best interests of the IRS in the collection of tax liability. When Dudley's submitted its installment agreement proposal, Dudley's stated that the $300 monthly installment payment "substantially exceeds our available cash flow." (Docket Entry No. 13, AR Supplement, Exhibit I at unnumbered page 4). It was reasonable for the appeals officer to conclude that if Dudley's could not pay the installment due to lack of cash flow, that the installment agreement was not in the IRS's best interest to facilitate collection. Therefore, the Court concludes that this argument is without merit and there was no abuse of discretion.

■ Third, the Plaintiff asserts that the appeals officer incorrectly concluded that Plaintiff was unable to pay its current operating expenses and current taxes. As stated *supra*, Dudley's admitted that the installments substantially exceeded their cash flow. Plaintiff argues that in making this determination, the appeals officer did not rely on Dudley's 2001 tax return, but instead used Dudley's 2000, return that showed $20,000 in losses that were accrued before the company's reorganization. Although there is no evidence that the appeals officer failed to consider Dudley's

2001 tax return submissions, the Court's review of the 2001 submissions concludes that it was reasonable and not an abuse of discretion for the appeals officer to conclude that Dudley's was struggling to even pay current expenses and current taxes.

■■■ Finally, Plaintiff asserts that the appeals officer abused its discretion by rejecting the proposed installment agreement on the basis of Plaintiff's prior noncompliance. Plaintiff had a long history of non-compliance and not keeping commitments to resolve tax problems or submit the proper paperwork. When Plaintiff's account was originally assigned to the revenue officer on October 25, 2000, Plaintiff had outstanding employment tax liabilities for the second and fourth quarters of 1998, the third quarter of 1999 and the second quarter of 2000. Plaintiff had also failed to file employment tax returns not the fourth quarter of 1999 and the first quarter of 2000 and unemployment tax returns for 1999. In addition to these delinquencies, Plaintiff also was not current on its federal tax deposits.

On November 7, 2000, Kevin Smith, the revenue officer assigned to the case, contacted Dudley's by telephone. (Docket Entry No. 12, AR at 93–94). Dudley's claimed that all payments were current and all returns had been filed. *Id.* The revenue officer requested copies of all returns and payments at issue by November 13, 2000. *Id.* Dudley's failed to provide these documents. *Id.* at 95.

Having not received any documentation from Dudley's, on November 22, 2000, the revenue officer requested a meeting on December 8, 2000. *Id.* After receiving meeting notification, Dudley's provided the revenue officer copies of its delinquent forms and copies of three payment checks. *Id.* at 97. The payments had been properly credited, and were accounted for in the calculation of the Dudley's outstanding liabilities. *Id.* Dudley's did not appear at the meeting, nor did it request that the revenue officer reschedule the meeting. *Id.* The IRS subsequently issued a summons for financial information on December 12, 2000. *Id.* at 98.

Ultimately it took another six months of IRS administrative actions before Dudley's became current on its returns and tax deposits. Dudley's did not file all its outstanding and overdue tax returns until February 13, 2001. Plaintiff did not become current on its tax deposits until June, 2001, after the IRS began to levy on the outstanding liabilities.

In its determination, the appeals officer must take into consideration the verification that the requirements of any applicable law or administrative procedure have been met, the issues raised by the taxpayer and whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary. 26 U.S.C. § 6330(c)(3)(A)-(C). The Court concludes that the appeals officer took these issues into consideration in light of Dudley's prior history as contained in the record. The appeal officer stated:

> The proposed levy actions balances the need for the efficient collection of taxes with your legitimate concern that any collection action be no more intrusive than necessary, because you do not have the ability to meet current taxes and obligations while also paying delinquent taxes within a reasonable amount of time. Furthermore, you have a poor compliance record and have been uncooperative not keeping commitments to pay taxes and file returns in the past. You have not demonstrated the inclination or ability to meet your tax obligations.

(Docket Entry No. 12, AR at 38).

Thus, the court concludes that the appeals officer did not abuse his discretion

and properly considered all relevant issues.

**4. Plaintiff's Contention that the Abuse of Discretion Standard Renders the District Court's Review Under 26 U.S.C. § 6330(d), An Empty Appeal.**

In asserting this argument Plaintiff cites Defendant's memorandum stating that:

The director has the discretion to accept or **reject any** proposed installment agreement. 26 C.F.R. § 301.6159–1(b) (emphasis added).

.　　.　　.　　.　　.

There is no requirement that the Service had to accept Plaintiff's proffered installment agreement. If the Service could determine that the agreement would not facilitate collection, the Service had every right to reject the installment plan.

(Docket Entry No. 15, Defendant's Memorandum in Support of Summary Judgment at 10).

Plaintiff then states that:

If the IRS has the unbridled and unlimited authority to reject "any installment agreement" proposed by the taxpayer then 26 U.S.C. Section 6330(d) permitting judicial appeal is an empty promise. Dudley's submits that this case represents precisely the type of arbitrary and unreasonable action by the Internal Revenue Service which the judicial appeal rights of 26 U.S.C. Section 6330 are intended to remedy.

(Docket Entry No. 19, Plaintiff's Memorandum in Support of Summary Judgment at 9).

This Court does not agree. An abuse of discretion is an arbitrary action not justifiable in light of the facts and circumstances presented in the record. *Gonzalez*, 996 F.2d at 808; *Balani*, 669 F.2d at 1161. The Sixth Circuit has held that an agency abuses its discretion if its decision "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis ..." *Gonzalez*, 996 F.2d at 808; *Balani*, 669 F.2d at 1161.

Here, this Court has determined, by a review of the record, that the appeals officer had several rational explanations for his determination to reject the proposed installment agreement that do not constitute unexplained departures from IRS policy and that are based on a review of the factual record. The appeals officer's decision is justifiable in light of the facts presented in the record that enumerate Dudley's poor financial situation, lack of compliance and lack of cooperation. Therefore, the appeal officer's action was justifiable.

 Although, the IRS standard permits the rejection of "any proposed Installment agreement" at the discretion of the IRS officer, a district court will not uphold the IRS's discretion without "a rational explanation" based on a permissible and justifiable basis. Therefore, this Court concludes that the abuse of discretion standard provides for an adequate appeal as contemplated under 26 U.S.C. § 6330(d).

For the reasons set forth above, the Court concludes that Defendant's motion for summary judgement (Docket Entry No. 14) should be granted and Plaintiff's motion for summary judgment (Docket Entry No. 18) should be denied.